IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS M. HODCZAK; JAMES M. CROSSMAN; THOMAS J. MAGDIC; JOSEPH A. LITVIK, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 08-649 |
| LATROBE SPECIALTY STEEL COMPANY, | ) ) ) | Judge Terrence F. McVerry Magistrate Judge Amy Reynolds Hay |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

Plaintiffs, Douglas M. Hodczak, James M. Crossan, Thomas J. Magdic and Joseph A. Litvik, on behalf of themselves and others similarly situated, commenced this collective action suit under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq*, alleging that defendant Latrobe Specialty Steel Company ("LSS"), discriminated against them because of their age when it terminated their employment in November of 2007. Despite the fact that discovery has not yet issued, LSS filed a motion for summary judgment arguing that it is entitled to judgment in its favor on all collective action claims. Plaintiffs have opposed the motion as premature and filed their own motion pursuant to Federal Rule of Civil Procedure 56(f) in which they ask that LSS's motion for summary judgment be denied or, in the alternative, that the court postpone ruling on the motions until they have had an opportunity to conduct discovery. For the reasons that follow, it is respectfully recommended that plaintiffs' motion to deny summary judgment pursuant to Fed. R. Civ. P. 56(f)

on all collective action claims [Dkt. 15] be granted, and that defendant's motion for summary judgement on all collective action claims [Dkt. 42], in fact, be denied.

II.     REPORT

    A.     Factual and Procedural Background

Hodczak was hired by Latrobe Steel Company on July 23, 1973. Complaint ¶ 14 [Dkt. 1]; Answer ¶ 14 [Dkt. 11]. In 1975, Latrobe Steel Company was subsequently acquired by the Timken Company and renamed Timken Latrobe Steel. Timken Latrobe Steel was then acquired by the Watermill Group and Hicks Holdings in 2006 and renamed LSS. Id. at ¶¶ 15, 17. At some point prior to the last change of ownership, Timken Latrobe Steel gave a number of employees, including plaintiffs, the opportunity to retire before the acquisition took place, which plaintiffs apparently chose to do. Defendant's Concise Statement of Material Undisputed Facts regarding Hodczak's claims ("DSOF-H"), ¶¶ 3, 4 [Dkt. 21]; Plaintiffs' Responsive Concise Statement regarding Hodczak's claims ("PRCS-H"), ¶ 4 [Dkt. 26]; Defendant's Concise Statement of Material Undisputed Facts regarding Collective Action claims ("DSOF-CA"), ¶ 6 [Dkt. 17]; Plaintiffs' Responsive Concise Statement regarding Collective Action Claims ("PRCS-CA"), ¶ 6 [Dkt. 27].[1] On December 9, 2006, after retiring from Timken Latrobe Steel, all of the plaintiffs were offered and accepted employment with LSS; Hodczak, in particular, was

---

[1] Although LSS has labeled its statement of the facts as "undisputed," plaintiffs have, in fact, disputed all but one of the fourteen facts offered by LSS in support of its motion. See Dkt. 27. While it does appear that plaintiffs have disputed a number of facts simply for the sake of disputing them, such as where the disputed fact is supported by the complaint, their quarrel with LSS's statement of the facts is largely that they have not had the opportunity to test the veracity of the facts as stated since there has been no opportunity to conduct discovery. Thus, to the extent that LSS complains that plaintiffs have not supported their objections with any evidence, they are seemingly unable to do so given the posture of the case.

hired as a Senior Sales and Marketing Representative. DSOF-H at ¶ 5; PRSF-H ¶ 5; DSOF-CA ¶ 6; PRSF-CA ¶ 6. Hodczak, who had received a series of promotions over the years while employed with these various companies, was again promoted by LSS on October 1, 2007, to Manager of Special Products Division. Complaint ¶ 16, 17; Answer ¶¶ 16, 17; DSOF ¶¶ 8-10; PRCS ¶¶ 8-10.

On November 2, 2007, plaintiffs were each called to the Human Resources Department and informed that they were being suspended without pay because they had been sending and receiving certain material via their LSS e-mail addresses which, according to LSS, violated the company's Electronic Communications Policy. Complaint ¶¶ 18-19, 32-33, 46-47, 59-60; Answer ¶¶ 18-19, 32-33, 46-47, 59-60.[2] Almost a week later, on or about November 8, 2007, plaintiffs were informed that their employment was being terminated for the reasons articulated at the time of their suspension. Complaint ¶¶ 20, 34, 48, 61; Answer ¶¶ 20, 34, 48, 61; DSOF-H ¶ 12; PRCS-H ¶ 12; DSOF-CA ¶ 7; PRSF-CA ¶ 7.

Plaintiffs nevertheless filed the instant complaint on May 13, 2008, bringing a single claim of disparate treatment under the ADEA.[3] Plaintiffs allege that LSS's stated reasons for terminating their employment are pretext for age discrimination and that their termination was part of a "systematic pattern and practice of terminating older employees." Complaint ¶¶ 22,

---

[2]LSS has represented in its Answer, and plaintiffs do not appear to dispute, that the e-mails were sexually explicit in nature. See Complaint ¶¶ 23, 37, 51, 64 (Acknowledging that "there is an entire culture at LSS" of sending pornographic and/or offensive e-mails, and categorizing those sent by plaintiffs as "less offensive" than those sent by other employees).

[3]Although plaintiffs also brought a disparate impact claim at Count II of the complaint, they moved to voluntarily dismiss that claim on June 16, 2008 [Dkt. 14]. The motion was granted by the court on June 17, 2008.

26, 35, 40, 49, 54, 63, 67.

LSS filed the instant motion as well as a motion for summary judgment on all of plaintiff Hodczak's claims on June 30, 2008. Plaintiffs responded to both motions with a Rule 56(f) motion on August 28, 2008. In a Report and Recommendation filed on January 23, 2008 [Dkt. 57], it was recommended that plaintiffs' motion to deny summary judgment pursuant to Fed. R. Civ. P. 56(f) on all of plaintiff Hodczak's claims be granted; that defendant's motion for summary judgment on all of plaintiff Hodczak's claims, in fact, be denied; that defendant's motion for summary judgment on all collective action claims be treated as a motion to dismiss and be granted; and that plaintiffs' motion to deny defendant's motion for summary judgement pursuant to Rule56(f) on all collective action claims be denied.

On February 10, 2009, plaintiffs' filed objections to the portion of the Report wherein it was recommended that plaintiffs' collective action claims be dismissed pursuant to Rule 12(b)(6) [Dkt. 59].[4] LSS responded to plaintiffs' objections on February 18, 2009 [Dkt. 60], and on February 26, 2009, plaintiffs, with leave of court, filed a reply brief [Dkt. 63]. Having found plaintiffs' objections persuasive, the undersigned has vacated section II. C. 2. of the previously filed Report and Recommendation and submits the instant Report and Recommendation on plaintiffs' collective action claims in its stead.

B.  Standard of Review

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[4]Plaintiffs have not objected to the portion of the previously filed Report recommending that LSS's motion for summary judgment regarding Hodczak's claims be denied and LSS has not filed any objections at all. See Pls.' Objections, p. 2 n.1 [Dkt. 59].

4

material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion; there must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005).

As the standard of review suggests, "the summary judgment process presupposes the existence of an adequate record." Doe v. Abington Friends School, 480 F.3d 252, 257 (3d Cir. 2007), citing Fed. R. Civ. P. 56(c). Accordingly, where a party opposing summary judgment is of the opinion that the record is inadequate and discovery is needed in order to fully address the motion, the party may file an affidavit pursuant to Rule 56(f) setting forth the reasons why it "cannot present facts essential to justify its opposition." Id.; Fed. R. Civ. P. 56(f). See Wheatley v. Guardian Life Insurance Co., 2007 WL 2893383, at *2 (D.N.J. Sept. 28, 2007). Should the court agree, it may either deny the motion for summary judgment or grant a continuance so that discovery my be obtained. Fed. R. Civ. P. 56(f). See Wheatley v. Guardian Life Insurance Co., 2007 WL 2893383, at *3. Although within the court's discretion, where a proper affidavit is filed, "a district court should grant a Rule 56(f) motion almost as matter of course unless the

5

information is otherwise available" to the party opposing summary judgment. Contractors Association of Eastern Pennsylvania, Inc. v. City of Philadelphia, 945 F.2d 1260, 1267 (3d Cir. 1991). See Doe v. Abington Friends School, 480 F.3d at 257 ("If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the [summary judgment] motion"). Either way, it is incumbent on a court to address a pending Rule 56(f) motion before deciding whether summary judgment is proper. Id., citing St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1315 (3d Cir. 1994).

C. Discussion

Plaintiffs collective action claims have been brought under the ADEA. The ADEA expressly adopts the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., which authorizes employees to bring collective age discriminations actions "in behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b) (made applicable to ADEA actions by 29 U.S.C. § 626(b)). Unlike class actions filed pursuant to Fed. R. Civ. P. 23, wherein the class action is described and requires each person who falls within the description to "opt-out" if they do not wish to be bound by the action, Sussman v. Vornado, Inc., 90 F.R.D. 680, 683 n.7 (D.N.J. 1981); Hendricks v. JPMorgan Chase Bank, 2008 WL 5191819 (D. Conn. Nov. 21, 2008), a collective action brought pursuant to § 216(b) requires the potential members of the putative class to "opt-in" before they can participate in the action. Ruehl v. Viacom, Inc., 500 F.3d 375, 379 (3d Cir. 2007). Accordingly, potential class members must receive notice of the proposed § 216(b) collective action before they are able to opt-in and before it can be determined whether the action may properly proceed as a collective action. Mueller v. CBS, Inc., 201 F.R.D. 425, 427-28 (W.D. Pa. 2001); Spellman v. Visionquest National, 1998

6

WL 1997458 at *2 (W.D. Pa. Feb. 13, 1998). Before putative class members will be permitted to opt-in the court must determine that each person is "similarly situated," a determination that "is necessarily fact specific." Id. See Sperling v. Hoffman-La Roche Inc., 862 F.2d 439, 444 (3d Cir. 1988). aff'd, 493 U.S. 165 (1989); Mueller v. CBS, Inc., 201 F.R.D. at 428; Brothers v. Portage National Bank, 2007 WL 965835 at, *3 (W.D. Pa. Mar. 29, 2007).[5]

LSS has nevertheless filed a motion seeking summary judgment on plaintiffs' collective action claims before plaintiffs have sought authorization to notify the class or moved for conditional certification arguing that plaintiffs are unable to establish that there are any other similarly situated salaried employees who could consent to be a party to the action. LSS also contends that plaintiffs are unable to demonstrate a *prima facie* case of pattern and practice discrimination or that any other potential opt-ins can meet the ADEA's administrative exhaustion requirements.

As previously discussed, plaintiffs have responded by filing a Rule 56(f) motion and affidavit arguing that LSS's motion is premature since they have not had the benefit of discovery and, thus, they are unable to properly respond to LSS's motion.

In addressing a Rule 56(f) motion, the court must consider what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has

---

[5]This process typically proceeds in two phases: The first step is the "notice phase" at which time the plaintiff seeks authorization to issue notice to other potential class members. At that point "[a] court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan.'" Mueller v. CBS, Inc., 201 F.R.D. at 427-28, quoting Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J.), aff'd, 862 F.2d 439 (3d Cir.1988), and 493 U.S. 165 (1989). The second phase begins after all potential class members have filed their consents to opt-in and the parties have engaged in further discovery; the court then revisits the class certification question. Id. At this juncture, if the court concludes that the plaintiffs are not "similarly situated," the conditional class is decertified. Id.

not been previously obtained.  San Filippo v. Bongiovanni, 30 F.3d 424, 432 (3d Cir. 1994), cert. denied, 513 U.S. 1082 (1995), quoting Contractors Association of Eastern Pennsylvania, Inc. v. City of Philadelphia, 945 F.2d at 1266.  Because it is undisputed that the parties had not engaged in any discovery at the time the instant motions or the responses thereto were filed, the reason the information sought has not been previously obtained appears clear.  As such, the court need only address the first two factors which initially requires the court to consider the affidavit submitted with the Rule 56(f) motion.  Contractors Association of Eastern Pennsylvania, Inc. v. City of Philadelphia, 945 F.2d at 1266.

In support of their motion, plaintiffs have submitted an affidavit from plaintiff Magdic wherein he states that in order to fully respond to LSS's arguments that plaintiffs are unable to prove a pattern and practice of age discrimination or that discriminating against older employees was LSS's standard operating procedure, they need to discover historical employment and/or termination information of salaried employees of LSS and its predecessors which will enable plaintiffs to make a statistical showing of age discrimination.  Magdic Aff. ¶¶ 7, 8 [Dkt. 42-2].  Specifically, Mr. Magdic indicates that plaintiffs must have the opportunity to serve interrogatories and requests for documents concerning the separation of salaried employees over the past several years including personal information, personnel files, reasons for separation and age at the time of separation.  Id. at ¶¶ 7, 10.  Magdic also indicates that plaintiffs must have the opportunity to depose a number of salaried employees who were nominally separated from LSS voluntarily during the past several years to explore whether the reasons given for their separations were pretext for age discrimination.  Id. at ¶ 9.  As well, Magdic states that plaintiffs will need to explore LSS's employment and termination practices going back several years and to

8

depose a number of LSS's top managers in this regard, including Mark Webberding, LSS Vice President of Sales and Marketing; Dan Hennessey, LSS Vice President of Manufacturing; Kevin Brahaney, former LSS Head of Human Resources; Hans Sack, President of LSS; and Joseph Wakeling, Vice President Distribution Marketing. Id. at ¶ 12.

Having identified the information they seek in discovery, the remaining inquiry is whether the information, if uncovered, would preclude summary judgment. As previously discussed, in its motion for summary judgment, LSS has challenged plaintiffs ability to establish a *prima facie* case of pattern and practice discrimination and whether there are any other similarly situated salaried employees who could consent to be a party to the action, as well as plaintiff's ability to demonstrate that any other potential opt-ins can meet the ADEA's administrative exhaustion requirements. Because it appears that the discovery plaintiffs seek speaks directly to these issues, it follows that plaintiff's Rule 56 (f) motion is properly granted.

LSS nevertheless argues that plaintiffs' motion should be denied, and its motion for summary judgment granted without giving plaintiffs the benefit of discovery, because plaintiffs have failed to plead or identify a single decision, policy or plan other than the Electronic Communications Policy as the basis for their claim and, thus, have failed to show that the putative class members are similarly situated, and because they have not identified any discovery to refute LSS's evidence that plaintiffs are the only potential opt-in plaintiffs. To support its position, LSS has submitted an affidavit from Susan Lawson, LSS's Senior Organizational Advancement Analyst, in which she has set forth certain facts surrounding plaintiffs' involuntary separations, the hiring of Mr. Hodczak's replacement, and the nature of the only other four separations that have allegedly occurred since LSS acquired ownership of the

9

company in December of 2006 [Dkt. 18-2]. Upon reflection, the court finds LSS's arguments unpersuasive.

First, it appears that the question of whether plaintiffs are able to support a determination that the members of the putative class are affected by a "single decision, policy or plan," is only at issue once the plaintiffs seek conditional certification of the class for purposes of providing notice to the other prospective class members. Mueller v. CBS, Inc., 201 F.R.D. at 428. See Brothers v. Portage National Bank, 2007 WL 965385, at *3; Spellman v. Visionquest National, 1998 WL 1997458, at *2. Plaintiffs in this case, however, have not yet sought to certify the class, conditionally or otherwise.

Further, LSS's argument that plaintiffs have not identified any discovery to refute its evidence regarding other potential opt-in plaintiffs only bolsters plaintiffs' position that they need discovery in order to properly respond to LSS's motion. While plaintiffs may ultimately be unable to demonstrate that the putative class members are similarly situated, it nevertheless appears that, at this juncture, they should be given the opportunity to test the veracity of LSS's evidence and to otherwise seek facts that will assist them in defining the class they propose to represent.

Indeed, it appears that in collective action cases, where the individual named plaintiffs have stated legally sufficient claims, any challenge to the propriety of allowing the case to proceed as a collective action is properly reserved until such time as the plaintiffs actually move to conditionally certify the class. Hughes v. Getronics Wang LLC, 2008 WL 2778885, at *1 (S.D.N.Y. July 8, 2008) (Finding that where the named plaintiffs have stated legally sufficient claims, contention that the case should not be permitted to proceed as a collective action "are

10

properly considered in the context of a class or collective action determination – they do not go to the sufficiency of the complaint").[6] See Equal Opportunity Commission v. University of Phoenix, Inc., 2008 WL 1971396, at *5 (D. Ariz. May 2, 2008) (Finding that plaintiffs' First Amended Complaint brings plaintiffs' collective action claims into the realm of *Twombly's* plausibility standard where it set forth the factual predicates for the named plaintiffs' claims and indicated that the claims were being brought on behalf of a class whose members had not yet been entirely determined); Brothers v. Portage National Bank, 2007 WL 965385, at *7 ("By simply proposing to represent all similarly situated Portage employees who were subject to and harmed by the same policies, Brothers is entitled to offer evidence to support her allegations"); Badgett v. Texas Taco Cabana, 2006 WL 367872, at **5-6 (S.D. Texas Feb. 14, 2006) (Agreeing with plaintiffs' argument that defendant's motion for a more definite statement should be denied because a determination of whether the case may proceed as a collective action is premature since plaintiffs have not yet filed a motion for class notice).

It also appears that courts generally allow the representative plaintiffs to conduct limited discovery so that they may more carefully define the proposed class before seeking authorization to notify the putative class members or moving for conditional certification. Mueller v. CBS, Inc., 201 F.R.D. at 427, 429; Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 566 (N.D. Ala. Sept. 29, 1995), aff'd, 114 F.3d 1202 (11th Cir. 1997). See Hughes v. Getronics Wang LLC, 2008 WL 2778885, at *1; Spellman v. Visionquest National,

---

[6]In contrast, class action suits brought pursuant to Rule 23 may be dismissed based upon the sufficiency of the pleadings before any discovery has been taken place since, in those cases, the class is necessarily described at the outset and includes any person falling within the description unless they "opt-out." See Hendrick v. JPMorgan Chase Bank, N.A., 2008 WL 5191819, at *2.

1998 WL 1997458, at *3. Cf. Smith v. Sovereign Bancorp, Inc., 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003) (Denying plaintiff's motion to conditionally certify the class without prejudice to refiling after plaintiffs have had the opportunity to conduct discovery on the issue).[7]

Here, LSS does not dispute that the individual plaintiffs have stated legally sufficient claims. Nor can it dispute that plaintiffs in this case have not yet moved to conditionally certify the class. As such, it appears that the arguments advanced by LSS challenging the propriety of permitting the case to proceed as a class action are premature and are more appropriately addressed at such time as plaintiffs seek conditional certification.

D. Conclusion

For these reasons, it is recommended that plaintiffs' motion to deny summary judgment pursuant to Fed. R. Civ. P. 56(f) on all collective action claims [Dkt. 15] be granted, and that defendant's motion for summary judgement on all collective action claims [Dkt. 42], in fact, be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

---

[7]As the court noted in its Report and Recommendation pertaining to plaintiff Hodczak's claims, the propriety of any specific discovery requests that plaintiffs may submit is not at issue here. Nevertheless, it appears clear that, at this juncture, plaintiffs are only entitled to minimal discovery designed only to assist them in defining the proposed class in anticipation of moving for conditional certification. See Mueller v. CBS, Inc., 201 F.R.D. at 429; Spellman v. Visionquest National, Inc., 1998 WL 1997458, at *3.

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge

Dated: 9 March, 2009

cc: Hon. Terrence F. McVerry

All counsel of record by Notice of Electronic Filing