IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS M. HODCZAK, JAMES M. CROSSAN, THOMAS J. MAGDIC AND JOSEPH A. LITVIK, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) Civil Action No. 08-CV-00649 |
| Plaintiffs, | )<br>) Judge Terrence F. McVerry and<br>) Magistrate Judge Amy Reynolds Hay |
| v. | )<br>) *Electronically Filed* |
| LATROBE SPECIALTY STEEL COMPANY, | )<br>) |
| Defendant. | ) |

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION**

Defendant Latrobe Specialty Steel Company ("LSS") files these Objections and respectfully requests the Court to adopt the reasoning of the January 23, 2009 Report and Recommendation ("R & R") instead of the March 9, 2009 R & R for three primary reasons.

First, in the January 23, 2009 R & R, Judge Hay found that Plaintiffs failed to assert anything more than bald allegations in support of their pattern and practice age discrimination claim and that they failed to meet the standard articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1967 (2007). LSS respectfully requests that the Court address this issue which Plaintiffs have placed squarely before the Court by arguing: (a) LSS' summary judgment on the collective action claims was premature and (b) their allegations met even the lesser standard of Fed.R.Civ. 12(b)(6).[1] To allow Plaintiffs' argument to stand, this Court would be holding that any salaried employee, age 40 or older, terminated for misconduct can allege a collective action on behalf of all

---

[1] This issue of whether Plaintiffs have pled facts supporting any "pattern or practice discrimination" has been fully briefed and ruled upon in the January 23, 2009 R & R, but the March 9, 2009 R & R does not identify what is the alleged "pattern or practice discrimination." Should the Court prefer procedurally for LSS to file a separate motion on this issue, LSS requests the Court to direct it to file a timely motion for judgment on the pleadings under Fed.R.Civ.P 12(c).

other salaried employees age 40 or older without identifying any unifying facts or standard operating procedure.  This cannot be the standard.  Otherwise, every single plaintiff case filed under the ADEA could be an age discrimination collective action without the plaintiff providing **any supporting factual allegations**.

Second, based on a Fed.R.Civ.P. 56 standard, Plaintiffs fail to put forth any evidence of a *prima facie* pattern or practice case and a close scrutiny of their Fed.R.Civ.P 56(f) affidavits show that even if provided with the information that they allege that they seek -- it would only serve at best, as circumstantial evidence to support their individual claims -- it could not support a disparate treatment collective action.  Further, Plaintiffs' affidavits show that they are seeking to use discovery to find a unifying policy or standard operating procedure despite well-established precedent prohibiting such use of discovery.  *See Ranke v. Sanofi-Synhelabo, Inc.*, 436 F.3d 197, 204 (3d Cir 2006) (discovery is not to be used "to find a cause of action").

Third, Plaintiffs have **not** rebutted LSS' evidence (and the information that they allege they want in their Fed.R.Civ.P. 56(f) affidavits has nothing to do with the fact) that there are no former or current employees who could meet the ADEA's exhaustion requirements and be part of any alleged class.  This is because: (a) there are no other salaried LSS employees who have filed age discrimination charges against LSS (Doc. 17, ¶ 14), (b) there is only one other LSS salaried employee age 40 or older involuntarily separated during the 300-day period preceding Plaintiffs' filing of an EEOC charge and he worked at a different location, in a different position, and was separated for completely unrelated reasons -- well-documented violations of accounting procedures (Doc. 17, ¶ 11), and (c) Plaintiffs lack standing to represent current employees of LSS who have not been discharged.  Further, LSS respectfully requests that the Court hold as a matter of law that any potential opt-in class could only include opt-in employees whose employment was terminated by

LSS during the 300-days preceding the filing of their EEOC charges on March 12, 2008 (Doc. 27, ¶ 13).[2]

A.  **Plaintiffs Fail To Set Forth Facts Making Their Class Claims Plausible Because Their Complaint Contains No Facts Supporting Their Representation of the Class that They Purport to Represent.**

    1.    Plaintiffs allege the following ADEA class, claiming to represent:

> themselves and all former salaried employees of Latrobe whose employment with Latrobe within the United States was terminated by Latrobe and who were at least 40 years of age at the time of termination, and all present salaried employees who are at least 40 years of age and who are, therefore, at risk of being terminated by Latrobe as a consequence of the application of Latrobe's unlawful employment practices (the "Class Members").

Compl. ¶ 71. Thus, Plaintiffs purport to represent this nationwide class of individuals without providing any sort of unifying facts that tie them together -- other than their age.

    2.    In other words, Plaintiffs (whose ages were 58 to 61) purport to represent employees who are ***substantially younger than them*** under *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996) as well as ***current employees*** who have experienced no adverse action.

    3.    The law in the Third Circuit, however, is that to proceed with a collective action, Plaintiffs must set forth a plausible factual basis to support their legal theory of relief. *Twombly*, 127 S.Ct. 1955, 1974 (a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible"); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (under *Twombly,* a

---

[2] These arguments that there are no other potential opt-in plaintiffs who meet the ADEA exhaustion requirements, that Plaintiffs lack standing to represent current employees, and that the temporal scope of any potential opt-in class cannot exceed the 300-days before Plaintiffs filed their EEOC Charges were raised in LSS' motion for summary judgment (Doc. 16, p. 9-13) and subsequent briefs, yet the current R & R does not address them. Should the Court choose not to rule on these issues or prefer procedurally for LSS to raise them in a separate motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), at the conditional certification stage, or through another summary judgment motion, LSS reserves the right to do so.

plaintiff must allege more than "mere elements of a cause of action; 'instead a complaint must allege facts suggestive of the [proscribed] conduct.' "); Fed.RCiv.P. 8(a)(2) (requiring Plaintiffs to plead their collective action theory so LSS is "on notice" of it).

4.  This standard is no less exacting for collective action allegations, particularly in a disparate treatment ADEA collective action, where unlike a FLSA collective action -- based on a uniform pay policy or misclassification of employees or a disparate impact ADEA collection -- based on a neutral, discriminatory practice, there has to be some logical basis for alleging that the group members were all treated the same because of their age.

5.  Plaintiffs must allege facts indicating there are other employees in the class "similarly situated" to Plaintiffs, *Sperling v. Hoffman-La Roche Inc.*, 862 F.2d 439, 444 (3d Cir. 1988), and that means Plaintiffs must plead "substantial allegations" that those potential class members were "together the victims of a single decision, policy or plan." *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd*, 862 F.2d 439 (3d Cir.), *and* 493 U.S. 165; *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001). Plaintiffs fail to do so.

6.  Plaintiffs claim the class members were all affected by some amorphous and unidentified "company-wide practices." Compl. ¶ 8. They obliquely refer to "the challenged policies, practices, and procedures" but fail to specify what those policies, practices or procedures might be. *Id.* ¶ 72. They mention "a systematic pattern and practice of terminating older employees" *Id.* ¶¶ 26, 40, 54, 67 without any specific factual support.

7.  A company terminating employees age 40 or older -- even numerous such employees -- by itself is not suggestive of an ADEA violation. *Sperling v. Hoffman-La Roche, Inc.*, 924 F. Supp. 1346, 1357, 1363 (D.N.J. 1996) (requiring some evidence that age was a motivating factor for a plaintiff to proceed with a pattern or practice ADEA collective action). Nor does discharging

4

numerous employees age 40 or older (which is not the case here) create a basis for a collective action disparate treatment claim -- there must be some facts indicating the decisions were related and motivated by age. *See id.*

8.      Plaintiffs must meet their Fed.R.Civ.P. 8 and Fed.R.Civ.P. 11 obligations of providing a factually plausible basis for there to be a collective action. *See Twombly*, 127 S.Ct. at 1974; *Melendez Cintron v. Hershey Puerto Rico, Inc.*, 363 F. Supp. 2d 10, 17-18 (D. P.R. 2005) (striking FLSA class allegations, noting the court's "responsibility to avoid the stirring up of litigation through unwarranted [opt-in notice] solicitation," and stating that "a frivolous fishing expedition at the employer's expense [should be] avoided"). *See also Atwell v. Gabow*, No. 07-2063-JLK, 2008 WL 906105, at 13 (D. Colo. March 31, 2008) (contemplating Rule 11 sanctions where plaintiff's counsel "effectively held [plaintiff's] claims hostage to a hasty plan to up the ante … by turning her individual action into a large-scale civil rights class action").

9.      Courts do not hesitate to strike ADEA class allegations, even at the pre-notice stage, when the class as pled is too vague. *See, e.g., Brady v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 525 F. Supp. 2d 1034, 1037-38 (N.D. Ill. 2007) (striking ADEA class allegations); *Benoit v. Ocwen Financial Corp., Inc.*, 960 F. Supp. 287, 289 (S.D. Fla. 1997) (dismissing ADEA and other classes because they were based on nothing but across-the-board "broad, vague, and conclusory statements that a 'pattern and practice' of discrimination exist[ed]"); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (denying ADEA class claim because claims were too broad and vague); *see also Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) (refusing to allow FLSA class notice because the class was conclusory and vague); *Ulvin v. Northwestern Nat. Life Ins. Co.*, 141 F.R.D. 130, 131 (D. Minn. 1991) (ADEA class denied).

10. Under *Twombly*, *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155-61 (1982),[3] and the decisions of various courts, Plaintiffs fall short of alleging facts making it plausible that all terminated and current 40 and older employees were subject to a single decision, policy, or plan and fail to provide LSS with any notice as to the single decision, policy, or plan at issue.

11. It cannot be the rule in the Third Circuit that an employer has to defend a collective action, go through collective action discovery, and oppose a motion for conditional certification simply because a plaintiff alleges that the employer purportedly has a practice of terminating workers age 40 or older in order to get rid of workers age 40 or older. (This is particularly ridiculous in this case where LSS has produced over 3,500 pages of sexually-explicit emails sent by Plaintiffs, which Plaintiffs cannot deny was at least a factor in their separations). Such a rule would open the flood gates for converting all single plaintiff cases into collective actions.

12. In sum, LSS respectfully requests that the Court: (a) address what "pattern or practice" Plaintiffs have alleged that meets the Fed.R.Civ.P 12(c) standard or direct LSS to file a separate motion on this issue, (b) adopt the holding in the January 23, 2009 R & R that Paragraphs 26 and 27 of Plaintiffs' Complaint are "devoid of any facts which would support a collective action" and that their collective action claims are "purely speculative and insufficient to state a claim under *Twombly*" (Doc. 57, p. 17), and (c) disallow the collective action claims from proceeding because Plaintiffs failed to comply with Rule 8, *see Benoit v. Ocwen Financial Corp.*, 960 F.Supp. 287, 289 (S.D. Fla. 1997) (dismissing plaintiffs' collective action claims and finding that "[m]ore is required than the plaintiffs' general 'across the board' assertion that defendants have a pattern and practice of

---

[3] *Falcon* involved a Rule 23 class action, however, the Supreme Court's finding that allegations of individualized discriminatory treatment are insufficient to support an across-the-board attack against a company are equally applicable here. *Falcon*, 457 U.S. at 155-61, 159; *see Gaston v. Exelon Corp.*, 247 F.R.D. 75, 82-83 (E.D. Pa. 2007) (relying, in part, on *Falcon* to reject across-the-board class); *Jones v. GPU, Inc.*, 234 F.R.D. 82, 89 (E.D. Pa. 2005) (same).

discrimination").

B. **The Alleged Discovery Plaintiffs Seek In Support of Their Collective Action Claims Is Irrelevant to the Issue of Whether LSS Has A Pattern or Practice of Discriminating Based on Age.**

13. LSS objects to the March 9, 2009 R & R on the basis that it holds that somehow allowing the discovery requested by Plaintiffs -- of "historical employment and/or termination information of salaried employees of LSS and its predecessors" -- will enable them to discover the unidentified policies or practices that they are challenging. (Doc. 64, p. 8-9).

14. Such a holding puts the proverbial cart before the horse. Plaintiffs -- who admit that they sent sexually-explicit emails (Doc. 64, p. 3, n. 2) -- essentially seek permission through their Fed.R.Civ.P. 56(f) affidavits to explore LSS' historical employment/termination information to identify (a) if there are any pattern or practices of age discrimination and (b) if so, if any such discriminatory pattern or practices somehow impacted a particular group of LSS and its predecessors' past and/or current employees, and (c) if so, if that impact similarly affected Plaintiffs such that they can represent those impacted former and current employees. (Doc. No. 42-2).

15. Such discovery will at best lead to circumstantial "me too" evidence that may or may not be admissible as recently addressed by the Supreme Court in *Sprint/United Management Co. v. Mendelsohn*, -- U.S.--, 128 S.Ct. 1140, 1144 (2008), but such discovery cannot (and Plaintiffs do not even attempt to articulate how it could) lead to a standard operating practice or procedure when there are no other terminations in LSS' history that involved employees sending sexually-explicit emails (Doc. No. 17, ¶ ¶ 6-9).

16. Put simply, Plaintiffs do not allege and no amount of discovery of historical employment/termination information will support any uniformity between LSS' involuntary separation of Plaintiffs that arose from a female employee's sexual harassment complaint against

Plaintiff Magdic that in turn led LSS to discover sexually-explicit emails that Plaintiffs, who were management employees, were sending.

17. Thus, there is no logical basis for the Court to assume that the historical employment/termination information could possibly yield a single decision, policy or plan when the information that Plaintiffs seek necessarily involves discovery of employees in different positions, circumstances, employment time periods, employment locations, departments, and with different performance, supervisors and reasons for their separations. *See EEOC v. McDonnell Douglas Corp.*, 17 F.Supp.2d 1048 1054-55 (E.D. Mo. 1998) (no pattern or practice where salaried employees were selected as a part of a RIF); *Sperling*, 924 F. Supp. at 1363 (finding policy of giving managers discretion was insufficient).

18. LSS further objects to such broad discovery -- when Plaintiffs have failed to identify any logical connection in their Complaint between their separations and those of any other salaried employees -- because "the purpose of discovery is to uncover evidence of facts pleaded in the Complaint" and "not serve as a fishing expedition" for facts not pled. January 23, 2009 R & R (internal citation and quotations omitted). *See also Twombly*, 127 S.Ct. 1955, 1967 ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonable believes to be viable *without discovery*, not to find out if it has any basis for a claim.") (emphasis in original); *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig.*, 2009 WL 294353, *2 (D. Minn. Feb. 5, 2009) ("A plaintiff must adequately plead a claim before obtaining discovery, not the other way around . . .[s]uch a rule . . . is designed to ensure that viable claims have been alleged before dragging defendants through the costly and time-consuming discovery

process").

19.     Thus, LSS respectfully requests that this Court not allow Plaintiffs to engage in massive historical employment/termination discovery regarding all of LSS and its predecessors past and current employees in the name of collective action disparate treatment discovery when Plaintiffs have failed to articulate any potential unifying facts between their employment separations relating to their sending sexually-explicit emails and any group of former or current employees.

**C.     Plaintiffs Fail To Allege How Any Discovery Could Enable Them To Rebut LSS' Undisputed Evidence that There Are No Other Former Employees Who Could Be Part of Plaintiffs' Alleged Class Because No Other Employees Meet the ADEA's Exhaustion Requirements and Current Employees Lack Standing.**

20.     LSS objects to the current R & R because the undisputed evidence -- which requires no discovery -- is that no salaried LSS employees have filed EEOC charges alleging age discrimination within the last couple years (Doc. No. 18-2, ¶ ¶ 42-43) and there is only one LSS salaried employee age 40 or older who was involuntarily separated during the 300-days preceding the date Plaintiffs' filed their EEOC charges. Accordingly there are no potential opt-in plaintiffs (Doc. 18-2, ¶ ¶ 29-32).

21.     Plaintiffs cannot dispute the ADEA's exhaustion requirements, 29 U.S.C. § 626(d)(2), limit the scope of any potential collective action to employees: (a) who filed EEOC charges or (b) whose claims accrued within the 300 days preceding the earliest-filed representative charge. *See Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 532 (11th cir. 1992) (under the single-filing rule, filing and non-filing plaintiffs claims must have arisen from "similar discriminatory treatment in the same time frame"); *Thiessen v. General Electric Capital Corp.*, 996 F.Supp. 1071, 1077 (D. Kansas 1998) ("the vast majority of circuit courts . . . apply the single-filing rule only to those plaintiffs whose claims arise in the 'same time frame' as the filing plaintiff or who could have filed timely EEOC charges on the date which the filing plaintiff actually filed his or her charge.")

9

22. Plaintiffs cannot dispute that there have been no other EEOC charges filed by LSS salaried employees within the last couple years as LSS has provided this information via affidavit and in its discovery responses served months ago and any FOIA request to the EEOC supports LSS' undisputed evidence.

23. Further, Plaintiffs cannot dispute that LSS has not involuntarily separated any other LSS salaried employees age 40 or older during the 300-days preceding March 12, 2008 -- the date Plaintiffs claim to have filed their EEOC Charges (Doc. 27, ¶ 13) except the Manager - Customer Service, Purchasing and Production Planning, age 46, who was employed outside the Latrobe facility where Plaintiffs worked in connection with admitted, well-documented violations of accounting procedures.

24. Lastly, as a matter of law, Plaintiffs cannot represent current employees who have experienced no adverse action and who have no alleged commonality with Plaintiffs except age (Plaintiffs apparently assert anyone age 40 or older is similar to them).

25. LSS respectfully requests that the Court hold that there can be no ADEA collective action because (a) there is no evidence that there are any LSS salaried employees who filed EEOC charges alleging age discrimination during the last couple years against LSS and there is no additional discovery needed on that point, (b) any non-filing opt-in plaintiffs could only piggyback on Plaintiffs' EEOC charges if they allege their claims accrued during the 300-days preceding March 12, 2008, which is the law in this district as recently espoused by the Honorable Judge Arthur J. Schwab in the decision attached hereto as **Exhibit A**, and (c) there is only one LSS employee who could arguably allege his claims accrued during that time period; therefore, there can be no class.

WHEREFORE, LSS requests all collective action claims be dismissed with prejudice.

Dated: March 19, 2009

/s/ *Thomas S. Giotto*
Thomas S. Giotto, Esquire (*PA 39568*)
*thomas.giotto@bipc.com*
Joseph F. Quinn, Esquire (*PA 37103*)
*joseph.quinn@bipc.com*
Jaime S. Tuite, Esquire (*PA 87566*)
*jaime.tuite@bipc.com*

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1041
Phone: 412-562-8800
Fax: 412-562-1041

Counsel for Defendant